**Frank T. HOLTKAMP, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 40568.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 25, 1979.

Latney Barnes, Barnes & Barnes, Mexico, for appellant.

John Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, Cynthia MacPherson, Pros. Atty., Mexico, for respondent.

DOWD, Presiding Judge.

Frank Holtkamp was charged by information with second degree murder in the death of his wife Delores. A jury in Audrain County, Missouri found him guilty of manslaughter and imposed a ten year sentence. Holtkamp appeals.

Late at night on July 19, 1977, an argument developed between the appellant and his wife. A struggle apparently ensued in which Mrs. Holtkamp received a cut on the eyebrow. Appellant then smothered his wife with either his hand, a foam rubber couch pillow or both. He weighted her body down with concrete blocks and chains and pushed her into a creek near the house.

The next morning appellant reported his wife as a missing person. An intensive search of the area revealed nothing. After appellant had varied his story several times,

the police began to suspect his involvement in the disappearance and took appellant to Jefferson City for questioning. He eventually led police to the body but denied ever intending to harm her. Appellant maintained that position throughout the trial.

At the trial, the court admitted into evidence photographs of Mrs. Holtkamp's partially decomposed body over appellant's objection that they were being offered simply to inflame the jury. A pathologist testified that he could not say with reasonable medical certainty the cause of Delores Holtkamp's death but in response to a hypothetical question by the State, he said that given the hypothetical facts, one would assume she died of asphyxia.

The appellant raises six contentions of trial court error: that the information was defective; that the court should have sustained his objections to the hypothetical question asked of the pathologist; that the trial judge should have granted his motion for acquittal at the close of the State's case; that the judge should have granted his motion for acquittal at the close of all evidence; that the manslaughter instruction given was defective; and, that photographs of the body and the concrete blocks he used as weights should have been excluded from evidence.

Appellant's first point attacks the sufficiency of the information. He charges that it was not a plain, concise and definite written statement of the essential facts constituting the offense charged. He further claims that it was indefinite and failed to describe the way or manner in which the crime was committed and failed to fully inform him of the charged offense.

· [1, 2] The first thing to note in responding to this allegation is that the appellant failed to file a motion for a bill of particulars at the trial level as provided in Rule 24.03 VAMR. If the appellant felt that the charge against him was not sufficiently detailed, he should have filed such a motion. *State v. Jenkins*, 494 S.W.2d 14, 17 (Mo. 1973). Whenever an otherwise legally sufficient information lacks the detail a defendant needs to prepare his defense, a

motion for a bill of particulars is the proper remedy. *State v. Shell*, 571 S.W.2d 798, 802 (Mo.App.1978). By failing to file such a motion, a defendant waives any objection he has to lack of detail. *State v. Parker*, 543 S.W.2d 236, 239 (Mo.App.1976). There is no such waiver, however, if the omissions in detail render the information "wholly insufficient and invalid." *State v. Kesterson*, 403 S.W.2d 606, 611 (Mo.1966).

We cannot say that the information in this case was wholly insufficient and invalid. It charged:

"That Frank Holtkamp, on about the 20th day of July, 1977, in Audrain County, Missouri, feloniously, willfully, premeditatedly, intentionally, and of his malice aforethought did make an assault upon one Delores J. Holtkamp and in some way and manner and by some means, instruments, and weapons, to this complainant unknown, did then and there feloniously, willfully, premeditatedly, intentionally and of his malice, aforethought, assault said Delores J. Holtkamp causing by said mortal injury Delore [sic] J. Holtkamp did die on the 20th day of July, 1977, contrary to the form of the statute in such case made and provided, and against the peace and diginity [sic] of the State."

Appellant's attack on the sufficiency of the information stems primarily from the language "instruments and weapons, to this complainant unknown", and "causing by said unlawful acts a mortal injury". He contends that the information should have specified that he was being charged with smothering his wife with a pillow or his hand. This contention is without merit.

The Missouri Supreme Court has upheld the sufficiency of a first degree murder information which contained almost the identical language as here. *State v. Poor*, 286 Mo. 644, 228 S.W. 810, 813 (1921). That court has also held that the information need not state the exact manner of death. *State v. Courtney*, 356 Mo. 531, 202 S.W.2d 72, 73–74 (1947). This court has ruled that it is surplusage to specify the kind of weap-

on used. *Henderson v. State,* 546 S.W.2d 546, 547 (Mo.App.1977).

■ Under these standards, it appears that the present information was not wholly insufficient and invalid simply because it did not specify that the manner of death was suffocation and the weapon used was either a pillow or hand. Thus, the failure to file a motion for a bill of particulars was a waiver of any complaints the appellant might have as to the information's specificity. Point one is ruled against the appellant.

The second point the appellant raises is that the court erred in overruling his objections to the hypothetical question asked of the pathologist who performed the autopsy. The appellant argues that the court should not have allowed the pathologist to answer the hypothetical question as to the cause of Mrs. Holtkamp's death, since the question did not call for an answer based on reasonable medical certainty and the doctor was not asked if the hypothetical facts were sufficiently detailed for him to form an opinion.

The State called Dr. John Boyce as an expert witness to testify as to the results of the autopsy he performed on Mrs. Holtkamp's remains. He said that other than the putrefactive changes the body had undergone during decomposition, he found three defects in the skin or subcutaneous tissues. The autopsy revealed a large flap in the scalp, a defect in or around the eyebrow and a defect in the abdomen. He stated, however, that he did not observe any physical trauma which, in his opinion, probably caused the victim's death.

Due to Dr. Boyce's inability to pinpoint the cause of death, the State posed a hypothetical question to him. The prosecutor told him to assume that Mrs. Holtkamp had been free of disease at the time of death, that the scalp flap and abdominal defect resulted from post mortem decomposition, that the eyebrow defect occurred before death, that she weighed about 240 pounds, and that she had been diagnosed two years earlier as having slightly elevated blood pressure. The prosecutor asked him if,

based on these facts, he could form an opinion as to the cause of death. Dr. Boyce answered that he had formed an opinion "that it probably was not a natural disease process". He went on to say, "without a physical injury such as a crushing head wound or a disruption of a vital organ, one would assume that death occurred predominantly by asphyxia."

The appellant objected that the question did not call for an answer based on reasonable medical certainty. While it is true that the prosecutor did not ask the pathologist if he could give an answer with reasonable medical certainty, he did ask if he could form an opinion based on the hypothetical facts. The doctor was testifying as a medical expert. He had already stated that it was impossible to determine the exact cause of death from the autopsy results because of decomposition. In response to the hypothetical, he was giving his educated opinion as to the cause of death given the hypothetical situation. He was not testifying as to the actual cause of death. This was only one piece of evidence for the jury to consider.

■ The trial judge possesses wide discretion in admitting opinion testimony. *State v. McGraw,* 571 S.W.2d 802, 804 (Mo. App.1978). Opinion testimony as to causation is admissible despite the fact that it does not go beyond "possibility", "probability", "could have", or "might have" as long as it is accompanied by other corroborating causation evidence. *State v. Banister,* 512 S.W.2d 843, 846 (Mo.App.1974).

■ Such is the situation here. Dr. Boyce was testifying as to what he would consider to be the probable cause of death, given the hypothetical facts and based on his experience as a medical expert. Other evidence corroborated his hypothetical opinion that death was caused by asphyxia. The appellant was seen by his son, Steve, holding his hand over Mrs. Holtkamp's mouth. His daughter, Lisa, heard "sniffles" coming from the front room after hearing her mother call out for her. The appellant admitted putting his hand over

his wife's mouth to quiet her down. A foam rubber pillow disappeared from the couch that night and the appellant had his son vacuum up pieces of the pillow the next morning. Pieces of foam rubber taken from the vacuum cleaner were stained with human blood and police found other pieces of foam rubber in Mrs. Holtkamp's hair when they recovered her body. Corroborated by this evidence, it was not an abuse of discretion for the trial judge to allow the pathologist to answer the hypothetical question even though the opinion was only as to probable causation.

The appellant also objects that the State did not ask Dr. Boyce if the facts given in the hypothetical question were sufficient for him to form an opinion as to the cause of death. The State did, however, ask the doctor if he could form an opinion as to the cause of death based on the given facts. The difference between these two questions escapes this court. Asking if he could form an opinion based on the facts set out in the hypothetical and asking if the facts were sufficient to form an opinion are so similar that any difference would be negligible. Point two is ruled against the appellant.

Appellant's third and fourth points are that the court erred in overruling his motions for acquittal at the close of the State's evidence and at the close of all evidence. He contends that these motions should have been sustained since the State failed to prove the corpus delicti.

■ The point concerning appellant's motion for acquittal at the close of the State evidence will not be considered since appellant presented evidence in his defense. When a defendant offers evidence on his own behalf, he fails to preserve his motion for acquittal at the close of the State's case and so this court need only consider whether his motion for acquittal at the close of all evidence was properly overruled. *State v. McQuerry*, 406 S.W.2d 624, 626 (Mo.1966).

■ The standards for a claim of insufficient evidence are firmly established. When reviewing such a claim, this court should accept all evidence which supports

the judgment and reject that which does not, indulging in every inference which bolsters the verdict. *State v. Guelker*, 548 S.W.2d 521, 525 (Mo. banc 1977), cert. denied 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260. In applying this test both circumstantial and direct evidence are to be considered. *State v. Stapleton*, 518 S.W.2d 292, 296 (Mo. banc 1975). When all the evidence is circumstantial, as here, the State's evidence must be entirely consistent with its theory of guilt. *State v. Crow*, 486 S.W.2d 248, 254 (Mo.1972). Such evidence, however, need not conclusively establish guilt nor absolutely refute innocence. *State v. Franco*, 544 S.W.2d 533, 534 (Mo.1976), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275). Although the State does have the burden of proving the cause of death beyond a reasonable doubt, it may do so using circumstantial evidence. *State v. Tettamble*, 431 S.W.2d 441, 443 (Mo.1968) (appeal after remand 450 S.W.2d 191).

As discussed in appellant's second point, there was ample circumstantial evidence in this case that Frank Holtkamp suffocated his wife. All evidence support that conclusion except the appellant's own denial and the pathologist's testimony that the condition of the victim's body precluded him from ruling out other possible causes of death.

■ Thus it is clear that the State offered sufficient consistent circumstantial evidence from which the jury could find the cause of death to be suffocation. Points three and four are ruled against the appellant.

■ The appellant's fifth point concerns the instruction defining manslaughter which he attacks for two reasons. The first reason is that the State failed to prove the cause of death. This is merely a restatement of points three and four and has already been discussed. The second reason is that the form of the verdict would supposedly allow the jury to find him guilty, even though half of the jury believed that he used his hand to smother his wife and the other half believed he used a pillow.

The manslaughter instruction which the respondent tendered and the court gave was taken verbatim from MAI–CR 6.08. The appellant's major objection to the instruction is that the words "by suffocating her" were inserted in the blank provided in MAI–CR 6.08 for inserting the means by which death was caused. He implies that the description should have been clarified by adding the instrumentality of suffocation such as "with his hand" or "with a pillow".

This contention overlooks the suggested descriptions of cause of death in MAI–CR 6.08 which read "such as shooting, stabbing, cutting, or striking, without further description." MAI–CR 6.08. If the drafters of the approved instruction had wanted the instruction to include the weapon or instrumentality used, they would not have included the words "without further description". The use of this phrase makes clear the drafters' desire for brevity.

Accordingly, the given instruction was sufficient in describing the cause of death as "suffocating her". Point five is ruled against the appellant.

Appellant's sixth and final point is that the court erred in admitting three photographs of the deceased and three concrete blocks with which appellant weighted down his wife in the creek.

After appellant had discovered that his wife was dead, he took her on a horse to a nearby creek. He attached two full concrete blocks to her sides and a one-half block between her ankles with logging chains. Appellant pushed her into the creek and reported her missing the next day.

Appellant testified that each day after concealing the body he returned to the creek to check on its condition. After about the second day, the body floated to the surface. The body subsequently split open and sank. At one point the appellant waded into the creek and wedged a stick into the mud to prevent the body from floating away. He placed an old log over the body to conceal it.

The appellant eventually led police to the creek. Upon removing the log from the body, police took a color photograph of the body showing part of a leg and a hand protruding from the water. The second photograph in question was an anterior shot of the body lying on its back, apparently being dragged with heavy ropes tied to the arms from the water onto a plastic drop cloth. This photograph showed two of the concrete blocks chained around the deceased's waist and also showed the head and abdominal defects about which the pathologist testified. The third photograph was a shot of the lower two-thirds of the body showing the half concrete block chained around the ankles. The blocks which were admitted were ordinary concrete building blocks.

The appellant contends that admitting these exhibits was error in that they were gruesome and inflammatory and did not tend to prove or disprove any material matter in issue. He bases this contention on the fact that he had admitted to weighting down the body and hiding it in the creek, so he claims the only purpose in admitting these exhibits was to inflame the jury.

That a witness has previously testified to a matter involving demonstrative evidence is not grounds for excluding the demonstrative evidence, especially photographs. *State v. Lee*, 549 S.W.2d 934, 939 (Mo.App.1977). In addition, the trial court has wide discretion in admitting such evidence and abuse of that discretion is *re*quired for reversal. *State v. Windmiller*, 579 S.W.2d 730, 733 (Mo.App.1979).

While it is true that the photographs in this case are gruesome it must be observed that the crime itself had gruesome consequences. The Missouri Supreme Court, quoting *State v. Moore*, 303 S.W.2d 60, 66 (Mo.1957), referring to repugnant photographs stated that "[i]f the photographic views are shocking and horrible it is because the crime is one of that sort, whether described in words or pictures." *State v. Duisen*, 428 S.W.2d 169, 173 (Mo. 1967). Photographs are admissible to prove or disprove material issues but this is not

the sole grounds for their admissibility. *State v. McClain*, 404 S.W.2d 186, 190 (Mo. 1966.) Photographs are generally held material and, therefore, admissible if, in the judgment of the trial court, they are relevant or will shed light on a material issue. *State v. Thresher*, 350 S.W.2d 1, 7 (Mo. 1961). The Missouri Supreme Court has upheld the admission of photographs, slides, and videotapes of the recovery of decomposed remains on the grounds that the evidence corroborated oral testimony and illustrated conditions existing at the scene. *State v. Damico*, 513 S.W.2d 351, 359 (Mo. 1974). Photographs may also be admitted into evidence to show identity, condition and location of the body, the nature or location of wounds and the cause of death, and to corroborate or refute testimony given. *State v. Jackson*, 499 S.W.2d 467, 472 (Mo.1973).

The photographs admitted in this case are, in this court's opinion, no more horrible than the testimony itself. All three photographs illustrated the manner in which the appellant hid the body and the condition at the scene. They corroborated the State's testimony and in one instance showed the nature of the head wound in the victim's eyebrow.

The alleged error by the trial court in admitting concrete blocks into evidence poses a less different problem. This court sees nothing inflammatory about ordinary concrete blocks and their admission did shed light upon appellant's method of secreting the body.

Accordingly, this court finds no abuse of discretion by the trial court in admitting either the photographs of the concrete blocks into evidence. Point six is ruled against the appellant.

Judgment affirmed.

CRIST and SATZ, JJ., concur.